J-A12022-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JAMES FOX, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF JOANN EVANS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | No. 1471 EDA 2017 |
| | : | |
| JEANES HOSPITAL, TEMPLE UNIVERSITY HEALTH SYSTEM, INC., KINDRED HOSPITAL-PHILADELPHIA, SOMERTON CENTER NURSING HOME, JITHA RAI, M.D. AND PAUL KARLIN, D.O. | : | |

Appeal from the Order Entered April 25, 2017
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  March Term, 2016 No. 160302193

BEFORE:  BOWES, J., OTT, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OTT, J.:                    **FILED JANUARY 11, 2019**

James Fox ("Plaintiff James Fox" or "Son"), individually and on behalf of the estate of his late mother, Joann Evans ("Decedent"), (collectively, "Fox"), appeals from the following two orders entered in the Philadelphia County Court of Common Pleas:  (1) an April 19, 2017, order, in which the trial court granted Somerton Center Nursing Home's ("Somerton") motion for reconsideration regarding its original denial of Somerton's petition/motion to compel arbitration in this medical negligence action, and dismissed Somerton from

the matter;[1] and (2) an April 25, 2017, order, in which the court decreed that Fox's motion for reconsideration was marked as moot.[2] Fox raises the following issues on appeal: (1) the court erred in dismissing Somerton from the lawsuit; (2) the court erred in refusing to sever Fox's Wrongful Death Act[3] claims from its Survival Act[4] claims (made on behalf of the Decedent's Estate), thereby forcing both sets of causes of action to be bound for arbitration; and (3) the court erred in finding the arbitration agreement was enforceable and conscionable. Based on the following, we affirm in part and reverse in part.

The trial court set forth the facts and procedural history as follows:

> On December 6, 2013, decedent JoAnn Evans suffered a seizure-like incident and was admitted to Jeanes Hospital via their emergency department. Decedent received treatment at Jeanes Hospital until January 7, 2014 when she was transferred to Kindred Hospital for post-acute care. Finally, on February 20, 2014 decedent was transferred to Somerton Center Nursing Home ("Somerton"). Except for brief transfers to Aria Health Hospital, Decedent Evans remained at Somerton until her death on March 30, 2014.
>
> Upon decedent's admission to Somerton, decedent's son Plaintiff James Fox was asked to sign a set of documents, including

---

[1] We note that while Fox appeals from the order granting Somerton's motion for reconsideration, it is essentially challenging the underlying order granting Somerton's petition to compel arbitration and dismissing Somerton from the matter. Therefore, our analysis will be focused on that order.

[2] Jeanes Hospital, Temple University Health System, Inc., Kindred Hospital-Philadelphia, Jitha Rai, M.D., and Paul Karlin, D.O., are not parties to this appeal.

[3] **See** 42 Pa.C.S. § 8301.

[4] **See** 42 Pa.C.S. § 8302.

an Arbitration Agreement ("the Agreement"), entitled "Voluntary Binding Arbitration Agreement." The Agreement states at the top that even if it is not signed, "the Patient will still be allowed to be cared for in this Center." Plaintiff Fox signed the Agreement on behalf of his mother as her [p]ower of [a]ttorney and in his individual capacity. In signing this agreement he assented to its terms, affirmed that he had both read all four pages of the Agreement, and had an opportunity to ask questions.

…

On June 8, 2016, following the death of his mother, decedent JoAnn Evans, Plaintiff James Fox filed the instant medical malpractice action against the doctors and facilities involved in the care of decedent prior to her death. Specifically as to Defendant Somerton, Plaintiff James Fox acting on behalf of his mother brings an action for negligence and a survival action. On his own behalf against Defendant Somerton, [Fox] brings a claim for negligent infliction of emotional distress and an action for wrongful death.

On September 23, 2016[,] Defendant Somerton filed a [p]etition to [c]ompel [a]rbitration. In this Petition, Defendant Somerton argued that the Arbitration Agreement was enforceable because: (1) the Agreement was not unconscionable, and (2) [Son]'s [s]tate of [m]ind was not a valid contractual defense so as to invalidate the Agreement. In response, [Fox] alleged that the Agreement was unenforceable because: (1) the Agreement was coercively entered into, and (2) the Agreement is an unconscionable adhesion contract. On November 18, 2016, after supplemental briefing and oral argument on the matter this Court denied [Somerton]'s [p]etition to [c]ompel [a]rbitration. On December 6, 2016 [Somerton] timely filed a [m]otion for [r]econsideration.

On January 3, 2017, in response to [Somerton]'s [m]otion for [r]econsideration this Court ordered additional oral argument in the matter and allowed for limited discovery related to the issue of whether the Agreement was enforceable. Ultimately, on April 19, 2017 this Court granted [Somerton]'s [m]otion for [r]econsideration thereby vacating the December 6 Order and dismissing Defendant Somerton entirely from the case.

Trial Court Opinion, 12/20/2017, at unnumbered 1-2. Fox filed a timely notice of appeal.[5]

Fox raises the following issues for our review:

A. Did the [t]rial [c]ourt err in dismissing the lawsuit against Defendant Somerton Nursing Home Center rather than referring the arbitrable claims against Somerton to arbitration, and retaining the wrongful death claim, and ordering a stay of judicial proceedings in order for the parties to arbitrate the claims against Somerton pursuant to [42] Pa.C.S.A. § 7304?

B. Whether the trial court erred in its application of **Taylor v. Extendicare Health Facilities, Inc.**, 637 Pa. 163,147 A.3d 490, 509-10 (Pa. 2016), because [Son] is [the] beneficiary and heir who can recover under the Wrongful Death Act, 42 Pa.C.S.A. § 8301(b), therefore, the wrongful death claim should have been bifurcated from the purportedly arbitrable survivor's claim?

C. Whether the trial court erred in finding that the arbitration agreement was enforceable and conscionable when the Agreement was signed by Decedent's son, who was neither educated nor sophisticated, was under extreme duress and reasonably believed that there was no alternative to entering into the nursing home's agreement in order to care for his dying mother?

Fox's Brief at 5-6.[6]

_____

[5] On July 21, 2017, the trial court ordered Fox to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Fox filed a concise statement on August 10, 2017. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on December 20, 2017.

[6] Based on the nature of Fox's claims, we have reorganized them for ease of disposition.

In Fox's first argument, he complains the trial court erred in dismissing Somerton from judicial proceedings rather than ordering a stay of the judicial proceedings. *See* Fox's Brief at 53. Relying on 42 Pa.C.S. § 7304[7] and ***Stern v. Prudential Fin., Inc.***, 836 A.2d 953, 955 n.1 (Pa. Super. 2003), Fox states:

---

[7] Section 7304 of the Pennsylvania Arbitration Act provides, in relevant part:

> **(a)** ***Compelling arbitration.*** **—** On application to a court to compel arbitration made by a party showing an agreement described in section 7303 (relating to validity of agreement to arbitrate) and a showing that an opposing party refused to arbitrate, the court shall order the parties to proceed with arbitration. If the opposing party denies the existence of an agreement to arbitrate, the court shall proceed summarily to determine the issue so raised and shall order the parties to proceed with arbitration if it finds for the moving party. Otherwise, the application shall be denied.
>
> …
>
> **(d)** ***Stay of judicial proceedings.*** **—** An action or proceeding, allegedly involving an issue subject to arbitration, shall be stayed if a court order to proceed with arbitration has been made or an application for such an order has been made under this section. If the issue allegedly subject to arbitration is severable, the stay of the court action or proceeding may be made with respect to the severable issue only. If the application for an order to proceed with arbitration is made in such action or proceeding and is granted, the court order to proceed with arbitration shall include a stay of the action or proceeding.

42 Pa.C.S. § 7304(a), (d). ***See also*** 9 U.S.C § 3 (federal provision directing that where a trial court concludes a matter should go to arbitration pursuant an agreement, the court shall stay the action until such arbitration has been completed).

> When referring a matter to arbitration, the trial judge is not to dismiss the case but is to stay the civil action until the arbitration is completed.
>
> Here, the [t]rial [c]ourt's April 19, 2017 [o]rder granted Somteron's [p]etition to [c]ompel [a]rbitration and dismissed Somerton from the case entirely. According to [Section] 7304, the [t]rial [c]ourt instead should have stayed this matter pending any arbitration proceeding between these parties.

Fox's Brief at 54 (citation omitted).

Because this issue touches upon appealability, we must determine whether we have jurisdiction over this appeal. ***N.A.M. v. M.P.W.***, 168 A.3d 256, 260 (Pa. Super. 2017) (citation omitted). With respect to jurisdiction,

> [t]his Court may address the merits of an appeal taken from "(a) a final order or an order certified as a final order; (2) an interlocutory order [appealable] as of right; (3) an interlocutory order [appealable] by permission; or (4) a collateral order." ***Commerce Bank v. Kessler***, 2012 PA Super 100, 46 A.3d 724, 728 (Pa. Super. 2012), quoting ***Stahl v. Redcay***, 2006 PA Super 55, 897 A.2d 478, 485 (Pa. Super. 2006) (citations omitted); ***see also*** Pa.R.A.P. 341(b). "As a general rule, only final orders are appealable, and final orders are defined as orders disposing of all claims and all parties." ***Am. Indep. Ins. Co. v. E.S.***, 2002 PA Super 289, 809 A.2d 388, 391 (Pa. Super. 2002); ***see also*** Pa.R.A.P. 341(a) ("[A]n appeal may be taken as of right from any final order of a government unit or trial court.").

***Haviland v. Kline & Specter, P.C.***, 182 A.3d 488, 492 (Pa. Super. 2018).

> "As a general rule, an order denying a party's preliminary objections is interlocutory and, thus, not appealable as of right. There exists, however, a narrow exception to this oft-stated rule for cases in which the appeal is taken from an order denying a petition to compel arbitration." ***Shadduck v. Christopher J. Kaclik, Inc.***, 713 A.2d 635, 636 (Pa. Super. 1998) (citations omitted). ***See also*** 42 Pa.C.S. § 7320(a)(1) (stating appeal may be taken from court order denying application to compel arbitration); Pa.R.A.P. 311(a)(8) (stating appeal may be taken as

of right and without reference to Pa.R.A.P. 341(c) from order "which is made appealable by statute or general rule.").[8]

*Elwyn v. DeLuca*, 48 A.3d 457, 460 n.4 (Pa. Super. 2012). *See also Davis v. Ctr. Mgmt. Grp., LLC*, 192 A.3d 173, 180 (Pa. Super. 2018).

When a court grants a petition to compel arbitration, we note the following: "Typically, a trial court's order directing a dispute to arbitration will not be deemed final, as it does not address the merits of the parties' claims but merely transfers their existing dispute to another forum in accordance with the arbitration provision of the underlying contract." *Fastuca v. L.W. Molnar & Assocs.*, 950 A.2d 980, 986 (Pa. Super. 2008), *citing Schantz v. Gary Barbera Dodgeland*, 830 A.2d 1265, 1266-1267 (Pa. Super. 2003). *See also Maleski v. Mut. Fire*, 633 A.2d 1143, 1145-1146 (Pa. 1993).

Turning to the present matter, we ordinarily would follow *Fastuca* and *Maleski*, however, we are faced with two problems. First, in its April 19, 2017, order, the trial court granted Somerton's petition to compel arbitration (*via* granting its motion for reconsideration), yet dismissed Somerton from the matter. *See* Order, 4/19/2017. Consequently, it appears Fox would face no opposing party when the case proceeds to arbitration. As noted above, Section 7304(d) requires a stay of judicial proceedings when an issue is

---

8 *See also* 42 Pa.C.S. § 7320(a)(2) (stating appeal may be taken from a court order granting an application to stay arbitration made under section 7304).

referred to arbitration. ***See Schantz***, 830 A.2d at 1266.[9]  Second, as will be discussed in detail below, it was an error on the trial court's part to dismiss Somerton altogether because Fox's wrongful death cause of action does not go to arbitration.   Accordingly, we conclude the trial court improperly dismissed Somerton from the proceedings before it, after referring the matter to arbitration.   Therefore, we remand and direct the court, upon motion of a party, to reinstate Somerton as an opposing party and stay the matter pending the resolution of the arbitration proceeding.[10]   Furthermore, we will now address the remaining arguments.

_____

[9]  In its Rule 1925(a) opinion, the trial court did not discuss its decision to dismiss Somerton from the matter or the question of appealability.

[10]  In ***Stern***, ***supra***, the case Fox relies on, a panel of this Court stated:

> We recognize that, in general, an order compelling arbitration is considered interlocutory.  ***See, e.g., Schantz v. Gary Barbera Dodgeland***, 2003 PA Super 295, PP4-5, 830 A.2d 1265 (Pa. Super. 2003); ***Rosy v. Nat'l Grange Ins. Co.***, 2001 PA Super 102, 771 A.2d 60, 61-62 (Pa. Super. 2001).  However, when referring a matter to arbitration, the trial judge is not to dismiss the case but is to stay the civil action until the arbitration is completed.  ***Schantz v. Gary Barbera Dodgeland***, 2003 PA Super 295 at PP6-7, 830 A.2d 1265.  Because the trial judge did not do so here and instead dismissed the civil action, and because the arbitration involved is binding arbitration, the order is a final order.  ***See Brown v. D. & P. Willow Inc.***, 454 Pa. Super. 539, 686 A.2d 14, 15 n.1 (Pa. Super. 1996) (order directing fee dispute to binding arbitration was appealable and not interlocutory because it contained "sufficient trappings of finality" in that appellant was required to have dispute heard by local bar association, not court of record, and arbitrators' decision was non-

Next, Fox claims the trial court erred in its application of **Taylor v. Extendicare Homes, Inc.**, 147 A.3d 490 (Pa. Sept. 28, 2016), *cert. denied*, 137 S. Ct. 1375 (U.S. 2017) ("**Taylor II**"), because Son is a beneficiary and an heir who can recover under the Wrongful Death Act, and therefore, the wrongful death claim should have been bifurcated from the purported arbitrable survivor's claim.[11]  **See** Fox's Brief at 23-30.  Relying on **Pisano v. Extendicare Homes, Inc.**, 77 A.3d 651 (Pa. Super. 2013), *appeal denied*, 86 A.3d 233 (Pa. 2014), *cert. denied*, 134 S. Ct. 2890 (U.S. 2014), Fox expounds on its argument as follows:

> Here, [Fox] entered an agreement on behalf of his mother as her personal representative.  After his mother's death, [Fox] became entitled by [Section] 8301(b) as a rightful beneficiary to bring a wrongful death action.  The wrongful death claims here

_____

> appealable).  Therefore, we have jurisdiction over this matter, and it is proper for us to remand to the trial court.

**Stern**, 836 A.2d at 955 n.1.

[11]  Section 8301, which governs wrongful death claims, states:

> An action may be brought, under procedures prescribed by general rules, to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery.

42 Pa.C.S. § 8301(a).  Section 8302, which governs survival actions, provides: "All causes of action or proceedings, real or personal, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants."  42 Pa.C.S. § 8302.

- 9 -

are not being brought by him in his personal representative capacity on behalf of [Decedent] or the Estate. Unlike wrongful death claims brought by a personal representative pursuant to [Section] 8301(d), [Son's Section] 8301(b) claims are not derivative of his mother's rights. The fact that he signed the Arbitration Agreement while acting as a personal representative for his mother has no bearing on his own rights or claims. As this Court in **Pisano** unequivocally stated: "[the signatory plaintiff] does not have an agreement with [the nursing facility] to arbitrate. [The nursing facility's] **agreement is between it and Decedent alone**." **Pisano**, 77 A.3d at 661 (emphasis added). "Regardless of [the nursing facility's] intent, Pennsylvania's wrongful death statute … does not characterize [the signing plaintiff] and other wrongful death claimants as third-party beneficiaries." **Id.**

Whatever Somerton's intent was, it cannot characterize a contract between itself and a patient as also applicable to or enforceable on wrongful death claimants who bear their own separate statute-derived claims. Therefore, [Fox] … cannot be compelled to arbitrate the wrongful death claim.

Fox's Brief at 29-30 (emphasis in original).

Our scope and standard of review are as follows.

[A]rbitration is a matter of contract and, as such, it is for the court to determine whether an express agreement between the parties to arbitrate exists. Because the construction and interpretation of contracts is a question of law, the trial court's conclusion as to whether the parties have agreed to arbitrate is reviewable by this Court. Our review is plenary, as it is with any review of questions of law.

**Midomo Co., Inc. v. Presbyterian Housing Dev. Co.**, 739 A.2d 180, 187

(Pa. Super. 1999).

A contract shall be interpreted in accordance with the parties' intent. When a written contract is clear and unambiguous, the parties' intent is contained in the writing itself. A party will be bound by this writing regardless of whether he or she read and fully understood its terms. A court cannot alter these terms

"under the guise of construction." Unless otherwise specified, a contract's language shall be given its plain and ordinary meaning.

*Wert v. Manorcare of Carlisle PA, LLC*, 124 A.3d 1248, 1259 (Pa. 2015), *cert. denied*, 136 S. Ct. 1201 (U.S. 2016).

Furthermore, while we recognize the trial court granted Somerton's petition to compel arbitration, we are guided by the following: "Our review of a claim that the trial court improperly denied preliminary objections in the nature of a petition to compel arbitration is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition." *Davis v. Ctr. Mgmt. Group, LLC*, 192 A.3d 173 (Pa. Super. 2018), *quoting Cardinal v. Kindred Healthcare, Inc.*, 155 A.3d 46, 49-50 (Pa. Super. 2017), *appeal denied*, 170 A.3d 1063 (Pa. 2017). "We employ a two-part test to determine whether the trial court should have compelled arbitration: 1) whether a valid agreement to arbitrate exists, and 2) whether the dispute is within the scope of the agreement." *Washburn v. Northern Health Facilities, Inc.*, 121 A.3d 1008, 1012 (Pa. Super. 2015), *appeal denied*, 167 A.3d 702 (Pa. 2017).

With regard to the first element, Fox does not dispute that he entered into an agreement on the behalf of the Decedent with Somerton. Therefore, we need not examine whether a valid agreement to arbitrate exists. With respect to the second element, we note that "[w]hether a claim is within the scope of an arbitration provision is a matter of contract, and as with all

questions of law, our review of the trial court's conclusion is plenary." ***Elwyn***,

48 A.3d at 461. Furthermore,

> [i]n general, only parties to an arbitration agreement are subject to arbitration. ***See Cumberland-Perry Area Vocational-Technical School v. Bogar & Bink***, 261 Pa. Super. 350, 396 A.2d 433 (Pa. Super. 1978) (parties cannot be compelled to arbitrate disputes absent agreement to arbitrate). However, a nonparty, such as a third-party beneficiary, may fall within the scope of an arbitration agreement if that is the parties' intent. ***Cf. Highmark Inc. v. Hospital Service Association of Northeastern Pennsylvania***, 2001 PA Super 278, 785 A.2d 93 (Pa. Super. 2001) (third-party beneficiary may enforce arbitration clause even though it is not a signatory to the contract).

***Smay v. E.R. Stuebner, Inc.***, 864 A.2d 1266, 1271 (Pa. Super. 2004). While

"the courts of this Commonwealth strongly favor the settlement of disputes

by arbitration,"[12] "arbitration agreements are to be strictly construed and such

agreement[s] should not be extended by implication."[13]

The historical application of arbitration to wrongful death and survival

act causes of action is complex, arduous, and fact-specific. Accordingly, we

will focus on the two cases largely relied upon by the trial court and Fox,

***Pisano***, ***supra***, and ***Taylor II***, ***supra***, as we find them persuasive in this

matter. In ***Pisano***, ***supra***, a nursing facility appealed from the trial court's

order denying its preliminary objections to the trial court's jurisdiction over a

wrongful death suit by the plaintiff, the son and administrator of the estate of

---

[12] ***Smith v. Cumberland Group, Ltd.***, 687 A.2d 1167, 1171 (Pa. Super. 1997).

[13] ***Elwyn***, 48 A.3d at 461.

the decedent, based upon the existence of an alternative dispute resolution ("ADR") agreement between the nursing home and the decedent. ***See Pisano***, 77 A.3d at 653. The nursing home sought to compel arbitration based on the ADR agreement, which the decedent's daughter had signed on his behalf upon his admission to the nursing home. The trial court in ***Pisano*** overruled the nursing home's preliminary objections, and determined that while "a wrongful death action 'lies in the tortious act which would support a survival action,' [the wrongful death claim] 'is independent of the decedent's estate's rights to an action against the tortfeasor.'" ***Id.*** at 654 (citation omitted). The issue on appeal was whether the trial court committed "an error of law by refusing to compel arbitration of [plaintiff's] wrongful death action where, under Pennsylvania law, a wrongful death plaintiff's right of action is derivative of, and therefore limited by, the decedent's rights immediately preceding death[.]" ***Id.*** at 653-654.

After analyzing the nature of wrongful death claims and the definition of "derivative," a panel of this Court concluded the plaintiff's wrongful death claim was not derivative of and defined by the decedent's rights, stating:

> [W]rongful death actions are derivative of decedents' injuries but are not derivative of decedents' rights. This conclusion aligns with the proper use of the term "derivative action" and is consistent with the Supreme Court's pronouncement in ***Kaczorowski*** [***v. Kalkosinsk***, 184 A. 663 (Pa. 1936)], which explained:
>
> > We have announced the principle that the [wrongful death] statutory action is derivative [of the survival action] because it has as its basis the same tortious act which would have supported the injured party's own cause of action. Its

- 13 -

> derivation, however, is from the tortious act, and not from the person of the deceased, so that it comes to the parties named in the statute free from personal disabilities arising from the relationship of the injured party and tort-feasor.
>
> *Kaczorowski*, 184 A. at 664.

*Pisano*, 77 A.3d at 660. Furthermore, the *Pisano* Court determined the plaintiff was not bound under the agreement to arbitrate the wrongful death action,[14] and held:

---

[14] Specifically, the Court acknowledged:

> [The nursing home]'s agreement is between it and Decedent alone. Regardless of [the nursing home]'s intent, Pennsylvania's wrongful death statute … does not characterize [the plaintiff] and other wrongful death claimants as third-party beneficiaries. It is, therefore, clear under relevant contract law that the trial court herein properly refused to compel arbitration. As this Court stated previously, "[T]he existence of an arbitration provision and a liberal policy favoring arbitration does not require the rubber stamping of all disputes as subject to arbitration." *McNulty v. H&R Block, Inc.*, 2004 PA Super 45, 843 A.2d 1267, 1271 (Pa. Super. 2004). This is especially true where, as here, holding otherwise would operate against principles of Pennsylvania contract law and the FAA. *Gaffer* [*Insurance Company, Ltd. v. Discover Reinsurance Company*], 936 A.2d at 1113 (*quoting* *E.E.O.C.* [*v. Waffle House, Inc.*, 534 U.S. 279, 293 (2002)]) ("Notwithstanding this favorable federal policy towards arbitration agreements, the Federal Arbitration Act 'does not require parties to arbitrate when they have not agreed to do so.'").
>
> Furthermore, … compelling arbitration upon individuals who did not waive their right to a jury trial would infringe upon wrongful death claimants' constitutional rights. This right, as preserved in the Seventh Amendment of the United States Constitution, "is enshrined in the Pennsylvania Constitution," and "the constitutional right to a jury trial, as set forth in Pa. Const. art. 1, § 6, does not differentiate between civil cases and criminal

- 14 -

[The] Pennsylvania's wrongful death statute creates an independent action distinct from a survival claim that, although derived from the same tortious conduct, is not derivative of the rights of the decedent. We conclude, therefore, that the trial court did not abuse its discretion in determining that Decedent's contractual agreement with [the nursing home] to arbitrate all claims was not binding on the non-signatory wrongful death claimants.

*Id.* at 663.

Following **Pisano**, in **Taylor v. Extendicare Health Facilities, Inc.**, 113 A.3d 317 (Pa. Super. 2015) ("**Taylor I**"), the underlying case involved multiple negligence claims against numerous defendant health care facilities for incidents that occurred and were alleged to have ultimately caused the decedent's death.[15] **Taylor**, 113 A.3d at 319. A panel of this Court held that despite the distinctions recognized in **Pisano** regarding wrongful death and

---

cases." **Bruckshaw v. Frankford Hospital of City of Philadelphia**, 58 A.3d 102, 108-109 (Pa. 2012). Denying wrongful death claimants this right where they did not waive it of their own accord would amount to this Court placing contract law above that of both the United States and Pennsylvania Constitutions. **Commonwealth v. Gamble**, 62 Pa. 343, 349 (1869) ("But that the legislature must act in subordination to the Constitution needs no argument to prove . . . .").

**Pisano**, 77 A.3d at 661-662.

[15] The co-executors of the estate filed the lawsuit, which included wrongful death and survival actions. Based on the opinion, it is unclear how the co-executors were related to the decedent.

- 15 -

survival claims, Pa.R.C.P. 213(e)[16] and 42 Pa.C.S. § 8301(a) required consolidation of wrongful death and survival actions for trial. *Taylor*, 113 A.3d at 325.

However, subsequently, the Pennsylvania Supreme Court reversed the decision in *Taylor I*, holding that Rule 213(e) conflicts with the Federal Arbitration Act ("FAA")[17] and therefore, is preempted. *Taylor II*, 147 A.3d at 510 ("The Supreme Court has made clear that bifurcation and piecemeal litigation is the tribute that must be paid to Congressional intent.").[18] The Supreme Court in *Taylor II* also opined:

> The only exception to a state's obligation to enforce an arbitration agreement is provided by the savings clause, which permits the

_____

[16] Rule 213(e) provides: "(e) A cause of action for the wrongful death of a decedent and a cause of action for the injuries of the decedent which survives his or her death may be enforced in one action, but if independent actions are commenced they shall be consolidated for trial." Pa.R.C.P. 213(e).

[17] *See* 9 U.S.C. § 1 *et seq.* The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

[18] The Supreme Court also stated:

> We recognize that Rule 213(e) is a procedural mechanism to control case flow, and does not substantively target arbitration. However, the Supreme Court directed … that state courts may not rely upon principles of general law when reviewing an arbitration agreement if that law undermines the enforcement of arbitration agreements. We cannot require a procedure that defeats an otherwise valid arbitration agreement, contrary to the FAA, even if it is desirable for the arbitration-neutral goal of judicial efficiency.

*Taylor II*, 147 A.3d at 510.

application of generally applicable state contract law defenses such as fraud, duress, or unconscionability, to determine whether a valid contract exists. Pursuant to the savings clause, the compulsory joinder mandate of Rule 213(e) could bar the trial court from bifurcating the Taylors' arbitrable survival action from its pending litigation in state court only if it qualifies as a generally applicable contract defense.

*Taylor II*, 147 A.3d at 509 (citations and footnote omitted). As such, the Supreme Court remanded the matter to the trial court, providing "the parties will have the opportunity to litigate whether there is a valid and enforceable arbitration contract in accord with generally applicable contract defenses and the FAA's savings clause." *Id.* at 513.

Turning to the present matter, the trial court found the following:

[T]he present case presents two distinct causes of action, decedent JoAnn Evans's survival action and Plaintiff James Fox's wrongful death action, which are not required to proceed together. It is not disputed that decedent's survival action is within the scope of the Agreement. Thus, decedent's survival claim must go to arbitration pursuant to the Agreement because as discussed above[,] the Agreement is enforceable because it is not unconscionable. **The only remaining issue then is whether [Fox]'s wrongful death claim is subject to the terms of the Agreement.**

Interpretation of an arbitration agreement is governed by principles of contract law. It is well settled in Pennsylvania that a contract that is clear on its face should be interpreted according to the language of the agreement. In this case, the Agreement begins by stating that the Agreement is between the Patient, the Patient's representative, and Defendant Somerton. This is reiterated in paragraph 15, which states that the agreement is binding on both the Patient and the Patient's representative. Finally, below the signature line the Agreement states that the Patient's representative is signing the Agreement both individually and as an agent of the Patient. Thus[,] in this case, where the agreement plainly states that it is binding on both decedent and on Plaintiff James Fox as decedent's representative, the

- 17 -

unambiguous language of the Agreement must be given effect so as to capture the wrongful death action within the scope of the Agreement.

In spite of the plain language of the Agreement, [Fox] argues that case precedent compels the opposite result. *See Taylor*, 147 A.3d at 493; *Pisano*, 77 A.3d at 660; *White v. Genesis Healthcare*, No. 736 (Ct. Comm. Pls. July 27, 2016); *Lipshutz v. St. Monica Manor*, 2013 WL 7020480 at *4 (Ct. Comm. Pls. 2013). [Fox], though, misconstrues the relevant case law. Most recently, this issue was examined by the Pennsylvania Supreme Court in *Taylor*, which stands for the proposition that wrongful death and survival claims can be bifurcated as discussed above. 147 A.3d at 510. *Taylor* though is inapplicable here, where the Agreement specifically states that Plaintiff James Fox was signing in both his individual and representative capacity. Therefore, even though *Taylor* would allow for [Fox]'s individual wrongful death claim to be bifurcated from decedent's survival claim, it is not necessary to bifurcate the claims because the Agreement per its own terms applies to both actions. *See Taylor*, 147 A.3d at 510; *Lesko*, 15 A.3d at 341-42; *Wert*, 124 A.3d at 1260.

Prior to *Taylor*, the Superior Court examined a similar agreement in *Pisano*. 77 A.3d at 660. In *Pisano*, the Superior Court held that non-signatory wrongful death claimants cannot be bound by the terms of an arbitration agreement. *Id.* Subsequent case law has affirmed the limited holding of *Pisano*. *See*, *e.g.*, *Taylor*, 147 A.3d at 499 (affirming that *Pisano* stands for the proposition that an arbitration agreement cannot be enforced against a non-signatory wrongful death beneficiary); *White*, 2016 WL 4410001 (stating that *Pisano* stands for the proposition that a "non–signatory claimant cannot be compelled to arbitration"). Thus, *Pisano* does not apply in this case because the claimant is a signatory to the Agreement. *See* 77 A.3d at 660; *see also Taylor*, 147 A.3d at 499.

*Plaintiff* also urges this Court to consider *White v. Genesis Healthcare*. *See* 2016 WL 4410001. In *White*, the Honorable Judge New of the Philadelphia Court of Common Pleas found that an arbitration agreement did not apply to compel both a wrongful death and survival action to arbitration where the representative signatory signed only in her representative capacity. *Id.* That is simply not the case here where the

> Agreement makes clear that Plaintiff James Fox was signing as both an individual and as decedent's representative. *See Burkett* [*v. St. Francis Country*], 133 A.3d at 31 n.13 (stating in a non-precedential opinion that the enforceability of arbitration agreements should be interpreted according to the specific language of each agreement).

Trial Court Opinion, 12/20/2017, at unnumbered 11-13 (some citations omitted). To summarize, the trial court determined that despite the fact that Fox's Wrongful Death Act and Survival Act claims were distinct, both *Pisano* and *Taylor II* were not applicable to these claims, and therefore, the agreement bound both Decedent and Son, as Decedent's representative, to arbitration because: (1) Son was a signatory to the Agreement; (2) the agreement began by stating it was between the patient, the patient's representative, and Somerton; (3) it was reiterated in the fifteenth paragraph that the agreement is binding on both the patient and the patient's representative; and (4) below the signature line, the agreement stated the patient's representative is signing both individually and as an agent of the patient.

We are compelled to disagree based on a review of the record and because we find *Taylor II* controlling. The Agreement provides, in pertinent part:

> **VOLUNTARY BINDING ARBITRATION AGREEMENT ("Agreement")**
>
> **If this Agreement is not signed, the Patient will still be allowed to be cared for in this Center.**

This Agreement by and between the Patient and/or the Patient's Representative (hereinafter collectively referred to as "Patient") and the Center ("Center" as indicated on page 4), is an Agreement intended to resolve by binding arbitration any dispute (as described below) related to any admission at the Center.

**THIS AGREEMENT WAIVES THE RIGHT TO A TRIAL BY JUDGE OR JURY. PLEASE READ CAREFULLY.**

…

**2. <u>Disputes to be Arbitrated</u>.** Any and all claims or controversies arising out of or in any way relating to this Agreement or the Patient's stay at the Center, including all prior stays at the Center, including disputes regarding interpretation and/or enforceability of this Agreement, whether arising out of state or federal law, whether existing now or arising in the future, whether for statutory, compensatory or punitive damages and whether sounding in breach of contract, negligence, tort or breach of statutory duties (including, without limitation, claims based on personal injury or death), regardless of the basis for any duty or of the legal theories upon which the claim is asserted, shall be submitted to binding arbitration. However, where the amount in controversy does not exceed the amount provided by state law for the jurisdiction of the small claims court, at the Patient's or Center's option, such dispute may be heard in such small claims court. However, an appeal from an award by the small claims court, by either the Patient or the Center, shall be arbitrated in accordance with the terms of this Agreement.

…

**15. <u>Binding on Parties and Others</u>.** It is the parties' intention that this Agreement shall inure to the direct benefit of and bind the Center, its parent, affiliates, subsidiary companies, owners, officers, directors, medical directors, employees, successors, assigns and agents and shall inure to the direct benefit of and bind the Patient, his/her successors, spouses, children, assigns, agents, third party beneficiaries, heirs, trustees and representatives, including the personal representative or executor of his/her estate, and any person whose claim is derived through or on behalf of the Patient.

Arbitration Agreement at 1-3 (emphasis in original); ***see also*** R.R. 190-192.

The signature block at the end of the Agreement is set forth as follows:

> THE PARTIES CONFIRM THAT EACH OF THEM HAS READ <u>ALL 4 PAGES OF THIS AGREEMENT</u>, HAS HAD AN OPPORTUNITY TO ASK QUESTIONS ABOUT THIS AGREEMENT, VOLUNTARILY INTENDS TO BE LEGALLY BOUND AND UNDERSTANDS THAT BY SIGNING BELOW, EACH OF THEM HAS WAIVED THE RIGHT TO A TRIAL BY JUDGE OR JURY, EACH OF THEM CONSENTS TO ALL TERMS OF THIS AGREEMENT AND EACH OF THEM UNDERSTANDS THAT THIS AGREEMENT IS VOLUNTARY AND IS NOT A PRECONDITION TO RECEIVING SERVICES AT THE CENTER.

> **PATIENT**:            <u>OR</u>   **PATIENT'S REPRESENTATIVE**:

> _____
> (Printed Name) (Date)
>                          _____
>                          (Printed Name) (Date)

>                          _____
>                          Signature of Patient's Representative in his/her individual capacity and in his/her capacity as power of attorney, legal guardian or agent authorized to bind Patient to this Agreement.

Arbitration Agreement at 4 (emphasis in original); ***see also*** R.R. 193a. In the "patient" signature block, "Joanne Evans 2/20/14" is printed on the line. In the "patient's representative" signature block, "Jim Fox Feb. 20, 2014" is printed on the top line and written in cursive on the second line. ***Id.***

We do not find that by signing both lines of the Agreement, Son contracted away his own rights to a jury trial for any personal claim that he possessed. The Agreement states it is between "the Patient and/or the Patient's Representative (hereinafter collectively referred to as 'Patient')" and

Somerton.  Arbitration Agreement at 1 (emphasis in original); ***see also*** R.R. 190a.  The signature line is the first time in the Agreement that refers to a "patient's representative" in his "individual capacity."  ***See*** Arbitration Agreement at 4 (signature page); ***see also*** R.R. 193a.  Prior to that point, the language in the Agreement utilized the "patient's representative" as a power of attorney, guardian, and/or agent, which is permitted in circumstances where a patient is admitted to a nursing facility.  Moreover, the legal options covered by the Agreement, as set forth in Paragraph 2, are all derivative from the Patient, as provided in Paragraph 15 ("any person whose claim is derived through or on behalf of the Patient").  Arbitration Agreement at 1, 3; ***see also*** R.R. 190a, 192a.  Significantly, the Agreement does not provide language notifying a "patient's representative" that wrongful death claims are not derived from the patient's own causes of actions.  In fact, under ***Pisano***, ***supra***, wrongful death claims are not derivative of a decedent's rights.  ***Pisano***, 77 A.3d at 660.[19]  The Agreement never addresses the implications

_____

[19]  The distinction between the wrongful death and survival actions is explained in ***Pisano*** as follows:

> The survival action has its genesis in the decedent's injury, not his death.  The recovery of damages stems from the rights of action possessed by the decedent at the time of death . . . .  In contrast, wrongful death is not the deceased's cause of action.  An action for wrongful death may be brought only by specified relatives of the decedent to recover damages in their own behalf, and not as beneficiaries of the estate . . . .  This action is designed only to

of a "patient's representative" signing in his individual capacity. Accordingly, without more specific provisions in the Agreement clarifying a "patient's representative's" individual obligation, it is a nullity to conclude that by signing on the "patient's representative" signature lines, one is agreeing to be bound to the document in his own capacity.[20, 21] Accordingly, when Fox signed the Agreement, he did not modify or disrupt his own right, or the rights of other family members and/or beneficiaries, to bring a wrongful death claim before the trial court. *See* 42 Pa.C.S. § 8301. Therefore, the trial court abused its discretion in granting Somerton's petition to compel arbitration of Fox's

---

deal with the economic effect of the decedent's death upon the specified family members.

*Pisano*, 77 A.3d at 658-659, *quoting* *Moyer v. Rubright*, 651 A.2d 1139, 1141 (Pa. Super. 1994).

[20] We note that there may be an exception to this determination if the matter involved a parent/guardian and minor child being admitted to a nursing facility. However, that limited exception is not applicable to the facts of the present appeal.

[21] We acknowledge that in *Del Ciotto v. Pa. Hosp. of the Univ. of Penn Health Sys.*, 177 A.3d 335, 356-357 (Pa. Super. 2017), a panel of this Court found the plaintiff-representative did not intend to individually bind himself to arbitration in a nursing care facility negligence action because he did not sign on the patient representative's "individual capacity" line. Here, as noted above, Son signed both lines. Nevertheless, we find the definition of Patient language in the contract does not mean Son signed in any other capacity than power of attorney.

wrongful death claims. As such, Fox is entitled to a trial on the wrongful death cause of action.[22]

Lastly, Fox contends the trial court erred in finding the arbitration agreement was enforceable and conscionable. **See** Fox's Brief at 39. Fox argues the Agreement is a "contract of adhesion because it significantly favors Somerton to the detriment of its elderly and infirm patients and their families who are similarly forced to sign this Agreement." **Id.** at 39-40. Second, Fox asserts the Agreement is substantively unconscionable because "it was highly favorable to Somerton to the detriment of [Decedent] and [Son]." **Id.** at 48. Fox also points to certain provisions in the Agreement, which it claims are unconscionable. **Id.** at 50-53.

> "Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." **MacPherson** [**v. Magee Meml. Hosp. for Convalescence**], 128 A.3d [1209, 1221 (Pa. Super. 2015)], quoting **Williams v. Walker—Thomas Furniture Company**, 350 F.2d 445, 449, 121 U.S. App. D.C. 315 (D.C. Cir. 1965). The party challenging the agreement bears the burden of proof. **Salley v. Option One Mortg. Corp.**, 592 Pa. 323, 925 A.2d 115, 129 (Pa. 2007).

---

[22] Moreover, Fox contends that Son "signed the Arbitration Agreement strictly as his mother's personal representative under her Power of Attorney, not in his individual capacity, and therefore, he did not waive his own rights or claims." Fox's Brief at 30. In its Rule 1925(a) opinion, the trial court noted Fox "did not advance this argument previously before the Court," but nonetheless addressed the merits of the argument and determined Fox misconstrued the legal precedent with respect to the issue. **See** Trial Court Opinion, 12/20/2017, at unnumbered 11-14. Based on our above-provided analysis, we need not address this claim further. **See also** Pa.R.A.P. 302(a).

An unconscionability analysis requires a two-fold determination: (1) that the contractual terms are unreasonably favorable to the drafter ("substantive unconscionability"), and (2) that there is no meaningful choice on the part of the other party regarding the acceptance of the provisions ("procedural unconscionability"). *MacPherson*, 128 A.3d at 1221 (citations omitted). Courts have refused to hold contracts unconscionable simply because of a disparity of bargaining power between the two parties. *Witmer v. Exxon Corp.*, 495 Pa. 540, 434 A.2d 1222, 1228 (Pa. 1981); *see also K & C, Inc. v. Westinghouse Electric Corp.*, 437 Pa. 303, 263 A.2d 390 (Pa. 1970).

*Cardinal*, 155 A.3d at 53.

Here, the trial court found the following:

i.      *The Agreement is Not Substantively  Unconscionable*

As to the first requirement, that the terms of the contract unreasonably favor the drafter, Plaintiff James Fox has asserted that this is so because the Agreement was drafted by Somerton to serve its exclusive purposes and was designed to specifically limit [Fox]'s rights, damages, and remedies. [Fox], though, in making this argument misconstrues the essential consideration of this requirement – reasonableness. *See Salley*, 925 A.2d at 333, 350 (noting that reasonableness is the touchstone of this requirement). In this regard, the relevant consideration is not whether the Agreement favors the drafter at all, but rather whether the Agreement unreasonably favors the drafter. *See id.* (finding an agreement unreasonably favored the drafter where it required the signatory to pay arbitration fees in order [to] initiate a claim); *Cardinal*, 155 A.3d at 54 (finding an agreement did not unreasonably favor the drafter where it made clear the consequences of signing and stated that signing was not a condition to receive care in the nursing facility); *MacPherson v. Magee Meml[.] Hosp. for Convalescence*, 128 A.3d 1209, 1221 (Pa. Super. 2015) (finding that an agreement did not unreasonably favor the drafter where it made clear the consequences of signing and did not impose greater fees on the signatory than they would incur in general civil litigation).

In this instant case, the Agreement does not unreasonably favor the drafter, Somerton, for two reasons. First, the Agreement makes expressly clear on its face that assenting to the

Agreement is voluntary. ***See Cardinal***, 155 A.3d at 54; ***MacPherson***, 128 A.3d at 1221. In fact the Agreement uses the term "voluntary" in reference to the Agreement in its title and then again at least three other times in the text of the Agreement. At the same time, the Agreement did not condition decedent's care on [Fox] signing the agreement, further underscoring the voluntary nature of the Agreement. ***See Cardinal***, 155 A.3d at 54 (finding that an agreement was not unconscionable and reasoning in part that this was so because the agreement stated in bold print at the top that signing the arbitration agreement was not a condition of receiving care); ***MacPherson***, 128 A.3d at 1221 (finding an agreement was not unconscionable and reasoning that this was so because the agreement stated that the patient would still receive care even if the arbitration agreement was not signed).

Second, even though the Agreement states that Plaintiff James Fox waived certain rights, it also bestows some advantages on [Fox]. Specifically, clause seven of the Agreement gave [Fox] thirty days to revoke assent to the Agreement and clause eight allowed [Fox] to have the Agreement reviewed by an attorney. ***See Cardinal***, 155 A.3d at 54 (reasoning that similar provisions in an arbitration agreement made the agreement not unconscionable). Here, even though the Agreement did undoubtedly favor Somerton, the Agreement also made allowances for [Fox] that evened the playing field between the parties. Therefore, in so much as the agreement was voluntary and as it made certain allowances for [Fox] the Agreement is not so one sided that it can be said to unreasonably favor Defendant Somerton. ***See id.***

*ii.*    *The Agreement is Not Procedurally Unconscionable*

An agreement is procedurally unconscionable where one party lacks meaningful choice in the acceptance of the agreement. ***Salley***, 925 A.2d at 331. Here, [Fox] argues that he lacked meaningful choice because the nature of the Agreement was not disclosed to him at the time of its signing, the Agreement was presented in a "take it or leave it" fashion, Defendant Somerton had superior bargaining power, and [Fox] has limited reasoning ability and a limited educational background. Each of these arguments is addressed in turn below.

- 26 -

[Fox]'s first argument that the nature of the agreement was not disclosed to him at the time of its signing is simply not supported by the facts in this case. The agreement itself plainly states that signing the agreement waives [Fox]'s right to a jury trial. So here, even if [Fox]'s contention that the paperwork was not orally explained to him is true, that does not mean the nature of the Agreement was never disclosed to [Fox] because in this case the Agreement plainly states on its face the consequences of signing. *See Cardinal*, 155 A.3d at 54; *MacPherson*, 128 A.3d at 1221. It should also be noted that [Fox], by his own admission, never read the paperwork he was given and never asked any questions about the documents, despite ample opportunity to do so. *See Hinkal v. Pardoe*, 133 A.3d 738, 743 (Pa. Super. 2016) (stating that failure to read a written agreement does not render it unenforceable); *Patriot Commercial Leasing Co. v. Kremer Restaurant Enterprises, LLC*, 915 A.2d 647, 651 (Pa. Super. 2006) (stating that a party to a contract cannot avoid the contract merely because they did not read the contract). In his own deposition, [Fox] states that a representative of Defendant Somerton sat with him for ten to twenty minutes while he reviewed the admissions paperwork. During this time he states that he did not ask any questions despite the fact that a representative – whom [Fox] even describes as "very nice" – was made available to [Fox] for as long as he needed to review the paperwork. Taking the factual record on the whole, this is not a case of non-disclosure as [Fox] argues that it is, rather this is a case where [Fox] did not undertake even the slightest effort to read or understand the paperwork he was presented with. *See Cardinal,* 155 A.3d at 54 (finding that where the agreement made clear that the parties were giving up their right to trial the agreement was not unconscionable); *MacPherson*, 128 A.3d at 1221 (same)[.]

Second, [Fox] argues that the Agreement was presented to him in a "take it or leave it fashion," but this argument is unfounded given the factual record. The Agreement itself states multiple times that it is a voluntary agreement. In fact, the title of the document is "Voluntary Arbitration Agreement." As such, [Fox] did not have to "take it or leave it" as he argues, but instead was given a choice as to whether or not to sign. Moreover, and even more detrimental to [Fox]'s argument, is the fact that the agreement states in multiple places that decedent's care was not conditioned on signing the Agreement. In obvious language, the agreement states in bold, underlined print at the top of the

document, "[i]f this Agreement is not signed, the Patient will still be allowed to be cared for in this Center." This information is reiterated again in paragraph three and then finally above the signature block. Therefore, given that the Agreement states in multiple places that signing it is voluntary and that signing the agreement is not a prerequisite for care, this agreement was not presented in a "take it or leave it" fashion, but rather [Fox] had a choice in whether to sign and that choice was made known to him in multiple places on the document. *See Cardinal*, 155 A.3d at 54; *MacPherson*[,] 128 A.3d at 1221.

Third, [Fox] argues that Defendant [Somerton] had superior bargaining power. Here, it is certainly true that Defendant Somerton, as drafter of the Agreement, was in a better bargaining position than [Fox]. At the same time, though, the Agreement makes several allowances that make the Agreement more fair to [Fox]. As stated above, the Agreement was entirely voluntary. Similarly, the Agreement gave [Fox] a thirty day window during which [Fox] could revoke his assent to the Agreement. Further, paragraph eight of the Agreement allows for the Agreement to be reviewed by an attorney prior to signing. So, even though, Defendant Somerton likely was in a better bargaining position than [Fox], [Fox] still enjoyed some procedural safeguards that gave [Fox] certain rights and shored up the strength of [Fox]'s position. *See Cardinal*, 155 A.3d at 54; *MacPherson*. 128 A.3d at 1221.

Finally, [Fox] has also argued that [Son] has a limited educational background and reasoning ability. Even if this is in fact true, [Fox] did not meet their burden of proof. At oral argument, [Fox]'s counsel stated that Mr. Fox was "a challenged individual," but provided no affidavits or other sources of factual proof to support this contention. N.T. 3/1/17 at 18, 19-20. Instead, [Fox]'s counsel urged this Court to consider [Son]'s deposition on the whole noting "if you read the deposition, I think you can see what kind of human being he is." *Id.* at 19. While certain parts of [Son]'s deposition, particularly the fact that he has never lived independently, tend to demonstrate that [Son] may have some challenges there is simply not enough on the record to state conclusively that [Son] is so challenged as to be unable to reason or understand the Agreement. *Id.* at 18-22.

Trial Court Opinion, 12/20/2017, at unnumbered 5-9.

Upon review of the record, the parties' briefs, the relevant case law, we find the trial court acted properly in determining that the Agreement should not be invalidated on the basis of procedural or substantive unconscionability. Fox's arguments that the Agreement was presented in a "take it or leave it fashion" and Somerton had superior bargaining power are unfounded. The court's analysis accurately addresses these concerns, and we affirm on that basis while highlighting the following. Of most importance, at the top of the Agreement, in bold typeface and underlined, the Agreement states that it is voluntary, it waived the right to a trial by judge or jury, and that if "it is not signed, the patient will still be allowed to be cared for in" the facility. Arbitration Agreement at 1; *see also* R.R. 190a.[23] Second, the Agreement provided the patient with the following: (1) a 30-day window during which he or she could revoke his or her assent to the Agreement; and (2) the right to have the document reviewed by an attorney if he or she chooses. Arbitration Agreement at 1, ¶ 8; *see also* R.R. 191a. Lastly, the Agreement provides that the parties pay their own fees and costs, which is similar to civil litigation practice in common pleas court, but Somerton will pay the arbitrators' fees and costs, with the exception of disputes regarding nonpayment. Arbitration Agreement at 3, ¶ 16; *see also* R.R. 192a; *MacPherson*. 128 A.3d at 1221-

_____

[23] This language is also stated in other places of the document. Arbitration Agreement at 1, ¶¶ 3, 5; Arbitration Agreement at 4; *see also* R.R. 191a, 193a.

- 29 -

1222. Accordingly, we conclude the trial court did not err in finding that the Agreement was enforceable and conscionable. Therefore, Fox's final argument fails.

In summary, we find the following: (1) the trial court erred in dismissing Somerton from the case and in failing to stay the proceedings before it while referring the matter to arbitration; (2) the court abused its discretion in compelling arbitration of Fox's wrongful death claim; and (3) the court did not err in finding the Agreement was neither procedurally nor substantively unconscionable, and therefore, it was enforceable as to all claims other than Son's wrongful death action.

April 19, 2017, order affirmed in part and reversed in part. April 25, 2017, order affirmed. Case remanded for action consistent with this decision. Jurisdiction relinquished.

President Judge Emeritus Ford Elliott joins this memorandum.

Judge Bowes files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/11/19