686 A.2d 14

**Linda S. BROWN, Individually and Linda S. Brown, Administratrix of the Estate of Kevin J. Brown, Deceased, Appellant**

v.

**D. & P. WILLOW INC., d/b/a Elk Creek Inn, William J. Schaaf.**

Superior Court of Pennsylvania.

Argued Oct. 10, 1996.

Filed Dec. 10, 1996.

Mario P. Restifo, Erie, for appellant.

Eugen C. Sundberg, Jr., Erie, for William J. Schaaf, participating party.

Before POPOVICH, FORD ELLIOTT and HESTER, JJ.

POPOVICH, Judge:

■ We reverse the order of the Court of Common Pleas of Erie County (per Joyce, J.) directing a "fee dispute" to binding arbitration by the plaintiff/appellant, Linda S. Brown, individually and as Administratrix of the Estate of Kevin J. Brown, Deceased.[1]

The procedural history of this case is not at issue: By praecipe dated June 30, 1987, a writ of summons was issued against D. & P. Willow, Inc., d/b/a Elk Creek Inn, by counsel for the plaintiff, Attorney William J. Schaaf, as a result of a one vehicular accident involving the plaintiff's decedent. Legal representation was secured by the plaintiff in 1985 on a contingency fee basis (33 1/3% of the amount recovered after filing suit). Thereafter, counsel located D. & P. Willow, Inc.'s insurer and began the process of negotiating a settlement when the insurer went into receivership, with all matters thereafter to be handled by the insurance commissioner for the State of Illinois.

The earlier mentioned writ was filed to toll the statute of limitations, followed by the submission of a claim (January 12, 1988) with the Director of Insurance for the State of Illinois and an expert's report (on pathology) hired by counsel to express an opinion on liability (dated December 22, 1989).

---

1. We hold this order to be appealable and not interlocutory with the direction that the appellant submit to binding arbitration in the absence of judicial authority for such a directive. Moreover, because the appellant is literally "out of court" (being required to have her "fee dispute" heard by a local bar association committee and not a court of record), the order contains sufficient trappings of finality ("out of court" and non-appealability of any resolution issued) to allow an immediate appeal. Cf. *Pullium v. Laurel School Dist.*, 316 Pa.Super. 339, 462 A.2d 1380, 1384 (1983)(Out of court); Pa.R.App.P. 311(a)(6)(Where claim of absolute discharge appealable despite award of new trial). Similarly, where order to submit to "binding" local bar association committee decision opposed and judicial forum preferred but foreclosed appeal permitted. *Id.*

542

In February of 1990, the Illinois insurance commissioner awarded $100,000.00 to the decedent's estate and $200,000.00 to the estate of the passenger of the vehicle operated by the plaintiff's decedent. To complete the transaction, Illinois demanded and received a release executed by the plaintiff on February 23, 1990, entitling her to $100,000.00 in settlement of her claim. The first payment amounted to $50,000.00 and was received by counsel on or about May 10, 1995, the balance of which was to be issued sometime in the near future.

However, by letter dated March 31, 1995, the plaintiff asked that Attorney Schaaf withdraw because she had "retain[ed] the services of another attorney, 'namely Mario Restifo.'" New counsel likewise wrote to Attorney Schaaf to terminate his representation, which took place by order of court dated April 17, 1995. Thereafter, a "Petition for Distribution of Funds" was filed by Attorney Schaaf seeking his one-third contingency fee based upon the Agreement executed by the plaintiff to disperse the $50,000.00 check then in his possession and any future distribution received from the Illinois insurance commissioner.

The plaintiff's new counsel filed an Answer with New Matter[2] alleging, inter alia, that Attorney Schaaf was discharged prior to the issuance of any check by the Illinois insurance commissioner, and, more particularly, that prior counsel "ha[d] not earned, and c[ould] not justify a fee of 33 1/3 percent, under the laws of the State of Pennsylvania." With this, the plaintiff sought return of the entire $50,000.00.

Attorney Schaaf filed a reply asserting that payment was due in accordance with the Contingency Fee Agreement executed in 1985 and all work was performed in compliance with the Agreement in a professional and diligent manner, "and any attempt to state it was not done [wa]s denied specifically and strict proof [wa]s demanded at the time of trial."

2. The plaintiff also filed preliminary objections, which were held by the court below to be moot with the initial presentment of the Answer with New Matter. Since this aspect of the case is not being questioned on appeal, our review is restricted to the order directing the appellant to "binding and final" arbitration.

By opinion and order dated February 21, 1996, the court ruled:

> It is clear from the facts of this case that Attorney Schaaf's efforts produced the $100,000.00 settlement. He is therefore entitled to a charging lien against the proceeds for his portion of the recovery pursuant to the contingency fee contract. *Recht v. Urban Redevelopment Authority of Clairton*, 402 Pa. 599, 168 A.2d 134 (1961). It is recognized that Plaintiff, through her new attorney, has questioned whether or not Attorney Schaaf earned this fee. Therefore, the $16,666.67 fee should be held in escrow in an account which requires the signatures of both attorney [*sic*] to release and the matter proceed to the Fee Dispute Committee of the Bar Association. It is recognized that the Plaintiff has suggested that Attorney Schaaf has committed malpractice and therefore no fee is due. Plaintiff's allegations would constitute a separate action and Plaintiff should proceed against Attorney Schaaf on that theory if convinced she has a cause of action. In short, even if the fee dispute Committee would hold that Attorney Schaaf has earned his fee, which would result in the escrow account going to Attorney Schaaf, the Plaintiff may still pursue her malpractice action.

Court Opinion at 3. By two subsequent amended orders dated February 29 and 22 of 1996, the amount to be placed in escrow was increased to $33,333.34 and "the decision of the Fee Dispute Committee of the Erie County Bar Association [wa]s to be final and binding on all the parties," respectively.

The issue we perceive has been forged by the actions of the parties and the court alike is one of whether binding arbitration may be forced upon litigants by a court in the absence of any agreement to that effect?

■ Third-party resolution of disputes has been an evolutionary process born of the necessity to ameliorate and expedite litigation in resolving differences. "The settlement of controversies by arbitration is a legally favored contractual proceeding of common law origin by which the parties, *by*

*consent,* submit the matter for determination to a tribunal of their own choosing in substitution for the tribunals provided by the ordinary processes of the law[.]" 3 P.L.E. Arbitration § 1 (1957)(Emphasis added).

■ In Pennsylvania, there are two types of recognized arbitration: voluntary and compulsory. In the former, a civil matter or issue may be referred by consent of the parties for hearing; whereas, in the latter, similar matters not involving title to real property where the amount in controversy does not exceed $50,000.00 "shall first be submitted to and heard by a board of three members of the bar of the court." 42 Pa.C.S.A. §§ 7361, 7362 (Supp.1996).

■ In either format, the award of the arbitrators is subject to vacation (e.g., where there was no agreement to arbitrate) and/or appeal by a disenchanted party. *Id.* at §§ 7314, 7320. All of these rights availed a litigant to challenge an arbitration award or channel the dispute into a preferred avenue for resolution have been denied the appellant without any reference to statutory or case law allowing for such a restriction. Resolution by judicial fiat, the effect of which curtails one's right to have a complaint heard in a forum of their choice as prescribed by law, cannot be condoned.

In the present scenario, as in most counties, the local bar association offered its services in "fee dispute" cases between client and attorney; to-wit:

### *PROCEDURES FOR ERIE COUNTY BAR ASSOCIATION*

### *FEE DISPUTE COMMITTEE* *

1. At the beginning of each year, the Chair of the Fee Dispute Committee shall divide the Committee into panels of three members each to hear the individual cases.

2. Each panel shall have its own chair.

3. When a request for a fee dispute hearing is made, the Chair of the Committee shall assign one of the panels to

* Procedures with option for binding arbitration implemented in 1989.

hear the case. The Chair of the panel will then be responsible for scheduling the hearing. Both the complainant and the respondent shall be notified of the identity of the panel members within seven days prior to the scheduled hearing. If either party objects to having any panel member hear the case, that panel member shall obtain a substitute acceptable to both parties to sit on the panel.

4. If any individual panel member cannot be present at the time a hearing is scheduled, it is the panel members responsibility to obtain a substitute from one of the other panels.

5. Prior to the beginning of an individual hearing, the Chair shall inform both parties that, if this Agreement is executed, the decision of the panel will be legally binding on both parties. At the beginning of the hearing, the Chair shall determine the amount of the fees in dispute.

6. The decision as to whether to execute the Agreement to Arbitrate is left to both parties. In the event that either party does not wish to agree to make the hearing binding and refuses to execute the Agreement, the panel shall still hear the fee dispute and make a non-binding recommendation to both parties. It will be the responsibility of the attorney whose fee is disputed to report to the Chair of the panel as to whether the panel's recommendation was followed by the parties.

7. The fee dispute hearing themselves will be informally held. The complainant may be represented by counsel, although that is not a prerequisite. The Chair of the panel shall decide what evidence is material and relevant and shall also decide what evidence the panel shall receive. The Rules of Evidence shall not apply.

8. The Chair of the panel shall report the panel's decision to both sides and to the Erie County Bar Association as soon as reasonably possible, but no later than three business days following the hearing.

## AGREEMENT TO ARBITRATE

The undersigned, intending to be legally bound hereby, agree to submit the above-captioned fee dispute to the

Special Fee Determination Committee of the Erie County Bar Association for arbitration and determination, hereby waiving any objection to the arbitrators who are to determine this matter, and agreeing that the award made shall be final and binding in accordance with the laws of the Commonwealth of Pennsylvania pertaining to common law arbitration. 42 Pa.C.S.A. § 7341.

---

Complainant

---

Complainant

---

Respondent

---

Respondent

See Appellant's Brief at 18a–19a.

As is evident from a reading of the "Fee Dispute" Agreement, absent written consent by the parties, resolution of the dispute is but a "recommendation". The court below attempted to convert the voluntary, non-binding nature of the dispute-resolution-process into a final, non-appealable decision imposed upon non-consenting parties to the process. This is not permissible. Cf. 42 Pa.C.S.A. § 7314(a)(1)(v)(On application of a party, the court shall vacate an award where "there was no agreement to arbitrate...."). In the absence of an agreement to arbitrate or be bound by the decision of a local bar association committee, the court was acting beyond any common law or statutory principles ("ultra vires") allowing for arbitration outside a judicially supervised arena. See Uniform Arbitration Act, October 5, 1980, P.L. 693, No. 142, § 501(a), as amended, 42 Pa.C.S.A. § 7301 et seq.

This type of unilaterally imposed, unreviewable decision-making process is violative of common law and statutory principles prevailing in this Commonwealth allowing for an element of choice in the vehicle to utilize in resolving one's dispute (by arbitration or de novo trial) and the right to appeal the decision. See 42 Pa.C.S.A. §§ 7320, 7362. These options

have been effectively denied the appellant by the court's usurpation of authority to force the appellant into a "fee dispute" process operated by the local bar association, and, to compound the error, preclude the appellant a due process right to have the ruling reviewed by an impartial tribunal.

We cannot allow this type of curtailment of one's substantive and due process rights to prevail in the name of judicial economy. The better approach, given the status of the case, would have been to place that portion of the settlement figure in dispute (33 1/3%) into escrow. Once this occurred, a formal complaint could have been filed with responsive pleadings. See, e.g., *Debroff v. Corretti,* 435 Pa.Super. 279, 645 A.2d 859 (1994). Thereafter, consistent with the Uniform Arbitration Act, the court could have directed the case into the arbitration arena for resolution and allowing for the full panoply of appellate rights associated therewith. See 42 Pa.C.S.A. §§ 7320, 7361; see generally *Monahan v. McGrath,* 431 Pa.Super. 501, 636 A.2d 1197 (1994).

Of the myriad of choices available to the litigants to have their controversy heard, the least acceptable was the one *forced upon them by the court:* unappealable, binding resolution by a committee of the local bar association. This was beyond the scope of the court's authority to order. Cf. 42 Pa.C.S.A. § 7314(a)(1)(v)(No agreement to arbitrate subjects award to vacation). To remedy the matter, we reverse.

Order reversed; case remanded and jurisdiction is relinquished.