IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lower Salford Township,                    :
                    Appellant              :
                                           :  No.  1444 C.D. 2021
        v.                                 :
                                           :  Submitted:  August 5, 2022
Jeffrey A. Wright                          :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                         FILED: August 22, 2023


        Lower Salford Township (Township) appeals from the November 17, 2021 order entered by the Court of Common Pleas of Montgomery County (trial court) ordering that the Township and Jeffery A. Wright (Wright) proceed with grievance arbitration, without prejudice to the Township's right to raise the issue of arbitrability with the arbitrator.  Upon review, we affirm.

## I.    FACTUAL AND PROCEDURL HISTORY

        This is the fourth time this case has been before the Court.  *See Wright v. Lower Salford Township Municipal Police Pension Fund* (Pa. Cmwlth., No. 788 C.D. 2012, filed June 19, 2013) (*Wright I*); *Wright v. Lower Salford Township Municipal Police Pension Fund*, 136 A.3d 1085 (Pa. Cmwlth. 2016) (*Wright II*); and *Wright v. Lower Salford Township Municipal Police Pension Fund* (Pa. Cmwlth., No. 103 C.D. 2019, filed December 20, 2019) (*Wright III*).

Wright is a former Township police sergeant who was injured in the line of duty in 1996. On April 17, 2002, the Municipal Police Pension Law, commonly known as Act 600,[1] was amended by the Act of April 17, 2002, P.L. 239, No. 30 (Act 30), to require a disability pension benefit for police officers permanently disabled in the line of duty.[2] Approximately one month after the enactment of Act 30, on May 16, 2002, Wright was honorably discharged by the Lower Salford Township Board of Supervisors (Board) because it was determined that he was physically unable to perform his job as a police officer. On January 6, 2003, the Board amended the Lower Salford Township Code by adopting Ordinance 2003-2 (Police Pension Ordinance), which incorporated Act 30's requirements. The Police Pension Ordinance, which conditioned eligibility for Act 30 disability pension benefits upon eligibility of benefits payable for permanent injuries sustained in service under the Township's long-term disability insurance policy, states:

> In the case of the payment of pensions for permanent injuries incurred on or after April 17, 2002, the amount of the payments shall be calculated at the rate of 50% of the member's salary at the time the disability was incurred, provided that any member who receives benefits for the same injuries under the Social Security Act . . . shall have his or her disability benefits offset or reduced by the amount of such benefits. **Determination of eligibility of disability benefits shall be based on the eligibility of benefits payable for permanent injuries incurred in service under the Township's long-term disability policy and shall be payable commencing at the later of termination of benefits under the long-term disability**

---

[1] Act of May 29, 1956, P.L. (1955) 1804, No. 600, *as amended*, 53 P.S. §§ 767-778.

[2] Prior to the enactment of Act 30, municipalities were not required to pay police officers a disability pension. Act 30 amended the Municipal Police Pension Law to create such an obligation.

2

**policy as a result of attaining the maximum age under the disability policy or upon the officer's attainment of his superannuation retirement date**.

Lower Salford Township, Pennsylvania, Code § 29-3(B) (Police Pension Ordinance) (emphasis added).

In 2006, Wright filed a two-count complaint against the Township, the Trustees of the Lower Salford Township Police Pension Fund (Township defendants), and two long-term disability insurance carriers, The Standard Insurance Company (Standard) and Highmark Life Insurance Company (Highmark). In Count I, against the Township defendants, Wright asserted that he was entitled to an Act 30 disability pension benefit of 50% of his salary, retroactive to May 16, 2002 (date of his honorable discharge). In Count II, Wright asked the trial court to compel the two insurance companies (which provided long-term disability insurance to the Township) to pay long-term disability benefits to Wright under the terms of a policy that was allegedly in effect at the time Wright was honorably discharged. On December 1, 2009, Wright accepted a $5,000 settlement from Standard, and voluntarily dismissed "with prejudice" Count II of the complaint.

In a decision dated April 4, 2012, the trial court granted the Township defendants' motion for judgment on the pleadings, concluding that the Township defendants were not obligated to pay Wright an Act 30 disability pension benefit. The trial court reasoned that the Board did not adopt the Police Pension Ordinance incorporating Act 30's provisions until January 2003, after Wright's honorable discharge on May 16, 2002, and, therefore, Wright's permanent injury occurred prior to effective date of the Ordinance. Wright appealed. In *Wright I*, we emphasized that the Police Pension Ordinance states that it applies to "payment of pensions for permanent injuries incurred on or after April 17, 2002," *i.e.*, the effective date of Act

3

30. Because the trial court did not address that issue, we remanded to the trial court to resolve outstanding factual issues material to the determination of whether Wright was entitled to the Act 30 disability pension benefits, namely the date of Wright's "permanent" injury.

On remand, the issue before the trial court was whether Wright incurred a permanent injury on or after April 17, 2002. After a remand hearing, the trial court determined that Wright incurred a permanent injury on January 23, 1996, the date he was first injured while trying to arrest a suspect. The trial court again entered judgment in favor of the Township defendants, and Wright appealed.

At issue in *Wright II*, was the definition of "permanent disability" in Act 30, and whether Wright was totally and permanently disabled on or after, rather than before, the effective date of the Police Pension Ordinance implementing the Act 30 amendments. We determined that, for purposes of the Act 30 disability pension benefits, Wright was totally and permanently disabled from performing police work for the Township on the date the Board passed the motion honorably discharging him "based on [his] inability to perform duties due to a physical disability," which amounted to an official, administrative adjudication of Wright's total and permanent physical disability. 136 A.3d at 1092-93. Because it was still unclear whether Wright was entitled to Act 30 disability pension benefits, we remanded the case to the trial court to decide whether Wright met certain technical requirements, *e.g.*, years of credited service, filing deadlines, and requirements for submission of information, etc., for benefits under the Township's long-term disability policy, a prerequisite under the Pension Plan Ordinance. *See* Pension Plan Ordinance, § 29-3(B) ("determination of eligibility of [Act 30] disability [pension] benefits shall be based on the eligibility of benefits payable for permanent injuries incurred in service

4

under the Township's long-term disability policy."); *id*. at 1094. On remand, the trial court held a bench trial[3] and concluded, based on the evidence presented, that Wright had satisfied all of the **technical** requirements (*i.e.*, application deadlines) to qualify for benefits under the Highmark long-term disability policy. In its January 10, 2019 order, the trial court concluded that Wright was, therefore, entitled to payment from the police pension fund of a properly calculated Act 30 disability pension payment from the time of reaching the superannuation date, at the rate of 50% of salary. *Wright III*, slip op. at 4. Both Wright and the Township defendants appealed. Wright asserted that the trial court erred in concluding that the Act 30 disability pension benefit would "commence" when he reaches the "superannuation retirement date," rather than the date on which he was honorably discharged and determined to have suffered a permanent work injury. *Id.*, slip op. at 5. The Township contested the trial court's findings and conclusions insofar as it determined that Wright made a timely claim with Highmark within the filing deadline of the long-term disability benefits policy. *Id.*, slip op. at 4.

In *Wright III*, addressing the Township's appeal, we affirmed the trial court on the issue of the timeliness of Wright's Highmark application for long-term disability benefits but noted that there remained outstanding legal and factual issues, aside from the technical requirements, as to whether Wright was entitled to long-term disability benefits from Highmark such that he would qualify for an Act 30 disability pension benefit, that needed to be resolved in a separate lawsuit involving Highmark (issues such as preclusion, settlement and release, negligence, comparative negligence, and the law surrounding insurance denials and an insured's statutory and common law obligations). *Id.*, slip. op. at 7. Regarding Wright's

---

[3] On remand, there were issues surrounding the timeliness of Wright's long-term disability benefits application with Highmark, which the trial court resolved in favor of Wright.

appeal, we explained that it was premature to decide when the Act 30 disability pension benefits would commence because the question of whether Wright was entitled to long-term disability benefits under the Highmark policy remained unresolved. Again, pursuant to the Township's Police Pension Ordinance, whether Wright could collect an Act 30 disability pension benefit from the Township's pension fund was contingent on his eligibility to receive long-term disability benefits under the Highmark policy. *See* Pension Plan Ordinance, § 29-3(B) ("determination of eligibility of [Act 30] disability [pension] benefits shall be based on the eligibility of benefits payable for permanent injuries incurred in service under the Township's long-term disability policy.").

Following our decision in *Wright III*, Wright sent a letter to the Township demanding that the Township commence payment of a properly calculated Act 30 disability pension from the Police Pension Fund. When the Township refused, with an explanation that *Wright III* clearly contemplated "either Highmark being made a defendant once again or the institution of a new lawsuit including Highmark as a defendant," Wright made a demand for grievance arbitration under the 2018 Police Collective Bargaining Agreement between the Township's Police Department and the Township (2018 CBA). (Reproduced Record (R.R.) at 47a-48a, 53a-54a, 373a-74a.) Wright reasoned that this Court in *Wright III* affirmed the trial court's determination that he was entitled to a properly calculated Act 30 disability pension payment and that he had met all of the technical requirements for the disability pension benefit under Act 30 and the Police Pension Ordinance. *Id.*

The Township then commenced this action, seeking an injunction to stay and prevent the arbitration proceedings Wright had attempted to initiate (Count

6

I) and a declaratory judgment declaring that there is no collective bargaining agreement between the Township and Wright to arbitrate Wright's 2002 disability pension claim (Count II). *Id.* at 3a-11a. The parties filed cross-motions for summary relief. On November 17, 2020, the trial court denied the Township's motion, granted Wright's motion, and ordered the parties to proceed with grievance arbitration under the 2018 CBA, without prejudice to the Township to raise the issue of arbitrability in that proceeding. (Trial Court Order, 11/17/20, at 1.)

The Township now appeals. It argues that Wright, who ceased being a police officer 16 years before the 2018 CBA went into effect, is precluded from filing a grievance and proceeding to arbitration under the 2018 CBA because he is not an active police officer with the Township and the Township did not agree to arbitrate the disability pension claim with Wright in the 2018 CBA. The Township contends that Wright is not a party to the 2018 CBA because he retired 16 years before it was executed, and the 2018 CBA, by its terms, only applies to claims by members of the Police Department as of the date of the 2018 CBA's execution and thereafter. The Township points out that Article I, Section 1 of the 2018 CBA specifically provides in this regard:

> The term "police officer(s)," as used within this Agreement, shall include **all present or future persons employed as full-time police officer(s)** hired through the procedures established in conformity with [T]he Second Class Township Code[4] and other applicable United States and Pennsylvania law. . . .

(R.R. at 64a) (emphasis added).

Thus, argues the Township, the 2018 CBA, by its plain language, could not have applied to police officers like Wright who retired prior to its execution. The

---

[4] Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§ 65101-68701.

Township further contends that the Police Pension Ordinance governing disability pension benefits is tied to eligibility under the long-term disability insurance policy of the Township and that *Wright III* clearly contemplates a new civil action which includes Highmark as a defendant, not a grievance arbitration where Highmark would not be a party.

Wright, in turn, argues that the trial court unequivocally held in its January 10, 2019 order that he met all of the technical requirements for the disability pension benefit under Act 30 and the Police Pension Ordinance and that he is entitled to a properly calculated disability pension payment from the time of reaching the superannuation date, at the rate of 50% of his salary. He notes that this Court, in *Wright III*, affirmed the trial court. He contends, therefore, that he was correct in pursuing the grievance and arbitration procedure as a result of the Township's failure to grant him a contractual benefit, a disability pension, in violation of the trial court's orders directing the commencement of payment of the Act 30 disability pension. He argues that the Township's failure to comply with the trial court's January 10, 2019 order and *Wright III* (which he claims established his entitlement to a disability pension) is a grievable event under the 2018 CBA. He argues that the "Township's misguided refusal to commence paying a disability pension" is "based on a single paragraph in the unreported Memorandum [Opinion] of the Commonwealth Court."[5]

---

[5] Wright is referring to this Court's explanation of Wright's need to proceed with additional litigation involving Highmark in order to determine Wright's eligibility for long-term disability benefits, which, in turn, will determine his eligibility for Act 30 disability pension benefits. Wright apparently erroneously believes that once the explanation by this Court in its *Wright III* opinion is ignored (because it was an unpublished decision), the trial court's January 10, 2019 order directs the Township to calculate and commence Act 30 disability pension payments (even though *Wright III* precisely held that the January 10, 2019 order did not so require). The fact that the *Wright III* decision was unpublished has nothing whatsoever to do with whether the parties themselves must heed the decision. Further, contrary to Wright's contention, the fact that Wright met the

**(Footnote continued on next page…)**

(Wright's Br. at 9, 13.) Wright also argues that the trial court's November 17, 2021 order did not dispose of all issues but, in fact, continued the litigation by submitting issues to arbitration, and, therefore, the Township's appeal should be quashed as interlocutory.

## II. DISCUSSION

### A. Whether the Township's Appeal Should be Quashed

Before we address the merits of the Township's issues, we first address whether we have jurisdiction over this appeal.[6] The trial court opines that the Township's appeal should be quashed because orders compelling parties to go to arbitration are interlocutory as they force the parties into, rather than out of, court, citing *Commonwealth ex rel. Kane v. Philip Morris, Inc.*, 128 A.3d 334 (Pa. Cmwlth. 2015). (Trial court opinion, 1/26/22, at 2.) We cannot agree with the trial court's analysis.

Pennsylvania Rule of Appellate Procedure (Pa. R.A.P.) 341 provides that an appeal may be taken as of right from any final order of a trial court. A "final order" includes an order that "disposes of all claims and of all parties." Pa. R.A.P. 341(b)(1). An order is final, and not interlocutory, "if it prevents a party from

---

"technical" filing requirements to obtain disability benefits under the Highmark long-term disability policy, does not end the matter. Legal and factual issues still remain, as we pointed out in *Wright III*, surrounding Wright's eligibility to receive long-term disability benefits under the Highmark policy that cannot be resolved without Highmark as a party. Once those issues are litigated and resolved, and only then, according to the Police Pension Ordinance, can Wright's eligibility for the Act 30 disability pension benefit be determined. It appears, however, that Wright has completely disregarded this aspect of our decision in *Wright III* and relies solely on the order affirming the trial court.

[6] "The question of the appealability of an order goes to the jurisdiction of the Court requested to entertain the question." *Fried v. Fried*, 501 A.2d 211, 212 (Pa. 1985).

presenting the merits of its claim at trial." *Noll by Noll v. Harrisburg Area YMCA*, 643 A.2d 81, 83 (Pa. 1994).

In *Brown v. D. & P. Willow Inc.*, 686 A.2d 14 (Pa. Super. 1996),[7] the Superior Court permitted the appellant to appeal an order requiring arbitration because the appellant was literally "out of court" after being required to have her "fee dispute" heard by a local bar association committee, rather than a court of record. *Id.* at 15, n.1. The court held that the order contained "sufficient trappings of finality" to justify an immediate appeal. *Id.* Likewise in the present matter, because all relief requested by the Township has been rejected, the order below contains sufficient trappings of finality to allow an immediate appeal.

Here, the Township commenced its equity action for the purpose of seeking (1) a declaration that Wright is not a party to the 2018 CBA, and (2) an injunction to enjoin the grievance arbitration process. (R.R. at 9a-11a.) The trial court's November 17, 2021 order finally denied both claims in the Township's complaint, effectively putting the Township out of court on the issue of whether arbitration was improper, and by ordering the parties to arbitrate. The November 17, 2021 order prevented the Township from having a trial on whether arbitration should be enjoined by requiring that very same arbitration to proceed. Thus, the order fully disposed of the Township's claims, and therefore, qualifies as a final order under Pa. R.A.P. 341.

Moreover, an order which denies a request to enjoin certain conduct, as was done by the trial court in its November 17, 2021 order, is an interlocutory

---

[7] Although Superior Court cases are not binding on this Court, such cases may offer persuasive precedent where they address analogous issues. *Commonwealth v. Monsanto Co.*, 269 A.3d 623, 679 n.20 (Pa. Cmwlth. 2021). The Superior Court case cited herein is relied on for its persuasive value.

matter specifically authorized for appeal as of right by Pa. R.A.P. 311(a)(4). Pa. R.A.P 311(a)(4) states that an appeal may be taken as of right from an order refusing an injunction. Accordingly, the Township's appeal is not interlocutory. Wright's application to quash the Township's appeal is denied.[8]

## B. Whether the Trial Court Erred in Ordering the Parties to Proceed with Grievance Arbitration

The Township contends that the trial court erred in ordering the parties to proceed with grievance arbitration to allow an arbitrator to decide if the Township is in violation of the 2018 CBA by failing to commence payment of an Act 30 disability pension to Wright. We disagree.

It is well settled that whether the dispute between the Township and Wright is in fact a grievance that can be arbitrated under the 2018 CBA must, at least initially, be left to an arbitrator to decide. In *Township of Sugarloaf v. Bowling*, 759 A.2d 913 (Pa. 2000), which involved a grievance dispute under Act 111,[9] a part-time, probationary police officer, who was not hired as a full-time officer, filed a grievance under a collective bargaining agreement. Sugarloaf Township (township) filed a complaint in equity for injunctive relief, requesting that the trial court stay the arbitration proceedings. *Id.* at 914. The trial court determined that as a probationary employee, the officer was not covered by the collective bargaining agreement and was not entitled to proceed to arbitration over his grievance, and

---

[8] We find the trial court's reliance on *Kane* to be misplaced. There, the trial court orders compelling multistate arbitration and denying single-state arbitration did not force the parties out of court, but merely directed the manner of arbitration, and, thus, did not trigger the right of immediate appeal under the Uniform Arbitration Act, 42 Pa. C.S. § 7361.

[9] Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–217.12. Act 111 applies to police and firefighting personnel.

11

granted the township's motion to stay the arbitration proceedings. *Id.* The officer appealed to this Court, which vacated and remanded the matter to the trial court to address whether the officer was a member of the township's police force. On appeal, the Supreme Court affirmed the vacation of the trial court's order, albeit on different grounds, holding that pursuant to Act 111, the question of whether a matter is arbitrable must first be determined by the arbitrator, not the court.

Here, the Township argues, based on plain language contained in the 2018 CBA, that (1) the 2018 CBA applies to "all present and future persons employed as full-time police officer(s)"[10]; (2) Wright is not a party to the 2018 CBA; and (3) it was not required to arbitrate with Wright. These are averments that the dispute is not covered by the 2018 CBA, *i.e.*, they present an issue of arbitrability that must be presented to an arbitrator for determination.

Accordingly, the trial court properly concluded that it had no authority to decide the issues presented in the Township's complaint and that they were for the arbitrator to decide in the first instance.[11]

---

[10] 2018 CBA, Article I, Section 1 (Definitions). (R.R. at 64a.)

[11] That said, we are compelled to clarify for the record that, contrary to Wright's position that the Township has violated this Court's order, this Court in *Wright III* did **not** direct the Township to commence the disability pension benefit to Wright. This Court is deeply troubled and perplexed by Wright's insistence to the contrary. As we explained in *Wright III*, even though Wright met the technical requirements for long-term disability benefits, the only way to resolve the matter of Wright's eligibility for the police pension benefit is to resolve Wright's eligibility for long-term disability benefits, and this requires further litigation with the presence and participation of Highmark. Suffice it to say, this cannot be accomplished in grievance arbitration between the Township and Wright. In declining to address the issues Wright raised on appeal (proper commencement date of the police pension benefits), we explained that the issue was premature and "only comes into the legal picture when, or if, the parties reach an agreement, or there is a judicial ruling obligating a party or parties, to pay long-term disability benefits to Wright. Until then, the issue that Wright raises is an abstract one, based upon a set of circumstances that do not yet exist and may never exist." *Id.*, slip op. at 7.
**(Footnote continued on next page…)**

The order of the trial court is affirmed.



_____
PATRICIA A. McCULLOUGH, Judge

---

Although we affirmed the trial court's January 10, 2019 order, we did so with that qualification. It is simply unreasonable for Wright to glean from our attendant order affirming the trial court that we intended to hold that he was entitled to immediate disability pension payments.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lower Salford Township,         :
             Appellant    :
                          :   No.  1444 C.D. 2021
          v.            :
                          :
Jeffrey A. Wright          :

## ***ORDER***

AND NOW, this 22nd day of August, 2023, the November 17, 2021 order entered by the Court of Common Pleas of Montgomery County is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge